STATE of Iowa, Appellee,

v.

Bobby Glenn PALIMORE, Appellant.

No. 58515.

Supreme Court of Iowa.

Oct. 20, 1976.

W. H. Gilliam and Charles T. Mattson, Waterloo, for appellant.

Richard C. Turner, Atty. Gen., Nancy J. Shimanek, Asst. Atty. Gen., and David H. Correll, County Atty., for appellee.

Submitted to MOORE, C. J., and MASON, RAWLINGS, HARRIS, and McCORMICK, JJ.

RAWLINGS, Justice.

Appeal from judgment on jury verdict finding defendant guilty of obtaining money by false pretenses in violation of Section 713.1, The Code 1973. We reverse.

This is the chronology of relevant events here involved:

February 5, 1974, defendant sentenced on false uttering of check charge, granted suspended sentence and placed on probation. Supervision transferred to Pennsylvania under Interstate Corrections Compact. Acts of the Sixty-Fifth General Assembly, Ch. 178 (Ch. 218B, The Code 1975). Palimore attendantly executed an "Agreement to Return", more accurately identified as a waiver of extradition in event Iowa authorities, at any time, desired his presence in this state.

November 13, defendant allegedly revisited Iowa absent leave to so do and obtained money by false pretenses from People's Finance in Waterloo.

November 26, defendant returned to Pennsylvania and there incarcerated in Pittsburgh jail on hold order by Pennsylvania Board of Parole for Iowa-based probation violation.

December 2, Iowa probation authorities were advised defendant in custody of Pennsylvania authorities for violation of aforesaid probation.

December 17, county attorney's information filed in Black Hawk County, Iowa, again charging defendant with obtaining money by false pretenses. This charge stemmed from the above noted November 13 incident. Attendant bench warrant is-

sued and forwarded to sheriff at Pittsburgh with written detainer request.

March 25, 1975, defendant filed habeas corpus petition in Pennsylvania.

April 1, hearing thereon with order entered to the effect defendant be released April 4, unless Iowa shall sooner take custody.

April 3, defendant escorted to Waterloo and incarcerated in county jail.

April 9, attorney appointed to represent accused.

May 13, defendant filed motion to dismiss the December 17, 1974 false pretenses charge due to asserted denial of a speedy trial.

May 19, above motion overruled after hearing.

May 20, trial commenced. Dismissal motion unsuccessfully renewed. Defendant also ineffectively moved for a mistrial order because the presiding judge, in jury's presence, had commented on defendant's right and failure to testify.

In support of a reversal Palimore contends trial court erroneously overruled his motions to dismiss and for a mistrial.

I. By way of exclusion, we first find Ch. 759A, The Code 1973 (Interstate Detainers Act), is instantly inapplicable because Palimore had not entered upon a term of imprisonment in a Pennsylvania penal or correctional institution at any time here concerned. See Art. III(a) of Code § 759A.1. See generally *State v. Wood,* 241 N.W.2d 8 (Iowa 1976).

II. Our review therefore focuses upon Code § 795.2, which provides in relevant part, where "[a] defendant indicted for a public offense, whose trial has not been postponed upon his application, be not brought to trial within sixty days after the indictment is found, the court must order it to be dismissed, unless good cause to the contrary be shown".

As aforesaid, defendant executed and delivered to Iowa authorities a waiver of extradition in connection with the transfer of his probation supervision to Pennsylvania authorities. See Code § 247.10. This means Palimore was available to Iowa officials at all times here concerned, absent resort to extradition. In other words, his presence in Black Hawk County could have been obtained by merely acquiring custody in Pennsylvania any time after December 17, 1974 and returning him to Iowa. See generally *Smith v. Hooey,* 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969). Parenthetically, we find nothing in the record which discloses defendant ever delayed his return to this jurisdiction or manifested a desire to so do. Furthermore, Pennsylvania apparently placed no related obstacle in the path of Iowa officials.

Admittedly, Palimore did initiate habeas proceedings in Pennsylvania after he had been there incarcerated about 114 days subsequent to the time Iowa authorities had been told defendant was being so held for violation of his Iowa parole. But this action by defendant did not constitute a delaying tactic. Rather it was a resort to judicial process because of inexplicable delay by Black Hawk County officers. Moreover, Palimore's invocation of habeas relief served, in essence, to expedite not hinder his return to Iowa.

So the question posed is whether good cause was otherwise shown which would reasonably serve to justify or excuse the 154 day delay from time of filing the county attorney's information (December 17, 1974) to ultimate trial (May 20, 1975). See Code § 795.2, *supra.*

Unquestionably, it was incumbent upon the State to bring Palimore's case on for trial. Correlatively, delay attributable to him would constitute good cause preventing the State from fulfilling its obligation. See *State v. Lyles,* 225 N.W.2d 124, 126 (Iowa 1975).

In the same vein, *State v. Goff,* 244 N.W.2d 579, 581 (Iowa 1976), says:

"In *State v. Leonard,* 240 N.W.2d 690, 691 (Iowa 1976), it was noted our previous cases hold each speedy trial issue must be decided upon its own peculiar facts under 'a delicate balancing process.' The court declared '. . . the rule by which we

now abide interprets § 795.2 as requiring trial within 60 days from the date an indictment or information is filed unless defendant waives this right, unless the delay is attributable to defendant, or unless the State shows good cause for postponement.'

"Likewise, '. . . in *State v. Shockey,* 214 N.W.2d 146, 150 (Iowa 1974) we said factors to be considered were those delineated in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972): length of delay, reason for the delay, defendant's assertion of his speedy trial right, and prejudice to defendant resulting from delay.

" 'At this level our review of the ruling on this issue is not de novo. To secure a reversal defendant must show trial court abused its limited discretion. * * * [citing authorities].' *State v. Donnell,* 239 N.W.2d 575, 578–579 (Iowa 1976).

"It follows if application of the factors set forth in *Donnell* and *Leonard* weigh against the State, 'the consequence must be absolute discharge.' *State v. Hines,* 225 N.W.2d 156, 159 (Iowa 1975)."

III. Under existing circumstances the only period shown to have been attributable to defendant for the delay in bringing him to trial was the time from filing of his dismissal motion (May 13, 1975) to time of ruling thereon (May 19) or six days. See *State v. Truax,* 232 N.W.2d 861, 863 (Iowa 1975). Compare *State v. Goff,* 244 N.W.2d at 583.

The result is self-evident. Trial court abused its limited discretion in overruling defendant's dismissal motion. This case must therefore be reversed and remanded with directions to dismiss the instantly involved charge and finally discharge defendant in connection therewith. See *State v. Johnson,* 217 N.W.2d 609, 612 (Iowa 1974). It is understood, however, such is to be without prejudice to any appropriate probation revocation proceedings which might have been undertaken or may yet occur.

In light of the foregoing the remaining assignment here raised by defendant is not reached.

REVERSED AND REMANDED WITH DIRECTIONS.